[L. A. No. 25497.   In Bank.   Nov. 10, 1959.]

J. A. CANNON et al., Petitioners, v. INDUSTRIAL ACCI-
DENT COMMISSION and RALPH T. ANDERSEN,
Respondents.

Gray, Cary, Ames & Frye, Sterling Hutcheson and Karl M. Zo Bell for Petitioners.

Everett A. Corten and Edward A. Sarkisian for Respondents.

McCOMB, J.—This is a petition for a writ of certiorari to review the action of the Industrial Accident Commission in awarding benefits to Ralph T. Andersen, an employee of petitioners.

*Facts:* Petitioners own some 4 acres of land in San Diego County upon which they maintain their home and an orchard consisting of about 140 orange trees, 20 to 30 avocado trees, and 10 to 12 other fruit trees. Petitioner J. A. Cannon is a retired business executive, and although the fruit from the orchard is sold for profit, the proceeds from such sales do not represent his chief source of income.

In December 1955, an oral agreement was entered into by petitioners and respondent Andersen, under which Mr. Andersen and his family would move into a keeper's cottage on the property and Mr. Andersen would take care of the property as if it were his own while petitioners were on an extended motor tour. Mr. Andersen and his family moved into the cottage in December 1955, and petitioners left on their tour in March 1956, returning in August of the same year.

While petitioners were away, Mr. Andersen painted a garage on the property and did other painting incidental to the remodeling of the cottage in which he and his family lived. He did some plumbing work and tore down an old chicken house, stacking some of the lumber and building a tool shed with the remainder. He pruned, fertilized and irrigated the fruit trees and picked and sold the fruit therefrom. He also planted a berry patch. He had previously worked as a painter and had taught the trade.

Pursuant to petitioners' instructions, Mr. Andersen cut down a diseased orange tree and later dug the stump from the ground. On August 25, 1956, he injured his back while loading the stump on a truck to haul it away.

Petitioners' payroll for the calendar year preceding Mr. Andersen's injury was $282.

On the basis of the foregoing evidence, respondent commission found that Mr. Andersen was employed as a "caretaker" as distinguished from an "agricultural" or "horticultural" employee.*

This is the sole question necessary for us to determine: *Did the evidence sustain the finding of the commission that Mr. Andersen was not engaged in "horticultural" labor at the time he was injured?*

*No.* Under the workmen's compensation provisions of the Labor Code, liability for the compensation provided therein exists against an employer for injuries sustained by his employees. (Lab. Code, § 3600.) However, the scope of the term "employee" is limited by section 3352 of the Labor Code, which provides in part: " 'Employee' excludes: . . . (b) Any person employed in farm, dairy, agricultural, viticultural or horticultural labor, or in stock or poultry raising where the compensation provisions of this division are rejected, or do not apply, in accordance with Chapter 9 of this part."

Section 4250 of the Labor Code, providing for a conclusive presumption of acceptance of the compensation provisions of the code by certain farmers, expressly excepts from its terms persons whose payrolls for the preceding calendar year do not exceed $500.

As petitioners' payroll for the calendar year preceding Mr. Andersen's injury was only $282, the exclusion provided in section 3352, subdivision (b), of the Labor Code controls if Mr. Andersen was engaged in one of the occupations enumerated therein.

One who labors on a farm or in an orchard is engaged in agricultural or horticultural labor, within the meaning of the statutory exclusion for persons so employed, when his work is done for the purpose of maintaining the farm or orchard.

That Mr. Andersen was at the time of his injury engaged in horticultural labor is supported by the following decisions:

---

*The panel which denied petitioners' petition for reconsideration stated: "While part of the applicant's [Andersen's] work may have been of a horticultural character, he was not working for an employer who was engaged to a substantial extent in the business of horticulture. Applicant's work included carpentry and plumbing and generally overseeing the residence and residence property of the defendants [petitioners]. Principally his work at the time of his injury consisted of watching over the premises during the absence of the owners."

In *George* v. *Industrial Acc. Com.*, 178 Cal. 733 [174 P. 653], the petitioner was employed as a combination janitor-gardener, and was injured while engaged in cutting a tree. The court held that when he fell in the course of trimming a decorative tree, he was acting in the capacity of a horticultural laborer and was thus beyond the purview of the Workmen's Compensation Act.

In *Lacoe* v. *Industrial Acc. Com.*, 211 Cal. 82, 83 [293 P. 699], an employee who was injured while trimming a tree testified: "My duties were to do farm work, put in the crop when it was the season, and do garden work, and carpenter work which was specified, and that was what I had been doing mostly, carpenter work and trimming trees and taking care of horses." The employer testified that he had hired the employee and his wife because he wanted somebody to take care of the place, so that when he came there "it would be running," and also to do garden work, clean up the place, and perform work that would be necessary on it, "like all country homes." He wanted the employee to build fences, trim trees and brush, and, in short, "to do anything that I do." The court held that this activity constituted horticultural labor.

In *Kramer* v. *Industrial Acc. Com.*, 31 Cal.App. 673 [161 P. 278], an employee of a dancing academy was engaged in the dual capacity of janitor-gardener. He sustained injuries while pruning a tree. The court annulled an award of the commission, holding that the employee's injury was attributable to horticultural labor and that he was therefore not entitled to the benefits of the Workmen's Compensation Act. The court, at page 677, quoted with approval from *Gleisner* v. *Gross*, 170 App.Div. 37 [155 N.Y.S. 946], where it was said: "Regardless of the contractual or colloquial designation of the duties or position of an injured employee, the question remains in every instance as to the work which he was in fact doing and the extent to which his work came within the category of the enumerated employments. The actuality, rather than the appellation, is the sound basis for the commission's action in determining whether an employee met with mishap in the course of an enumerated employment."

In *Miller & Lux, Inc.* v. *Industrial Acc. Com.*, 179 Cal. 764 [178 P. 960, 7 A.L.R. 1291], a workman, whose duty was to repair wagons in a shop operated on a farm for the purpose of keeping agricultural implements and vehicles used on the farm in order, was injured while repairing vehicles and

implements on the farm. The court held that he was engaged in agricultural or horticultural labor within the meaning of the Workmen's Compensation Act, saying, at page 767: "The law of California has exempted the farming industry from the operation of this statute, and if a worker upon a farm may be reasonably classified as one engaged in agriculture, his employer is clearly entitled to the benefit of this exemption. While it is true that an employer may be engaged in several sorts of industry, some of them within and some of them without the purview of the Compensation Act, and that an employee may at different times do work of one kind or the other, it is equally a fact that where from the great extent and complexity of farming operations on a given rancho, the work of the farmers is classified and each is given a limited, rather than a diversified duty, that circumstance alone will not make some of them artisans rather than agriculturists."

In *Irvine Co.* v. *California Emp. Com.*, 27 Cal.2d 570 [165 P.2d 908], the Unemployment Insurance Act was involved. This act is closely analogous to the Workmen's Compensation Act, in that both acts were intended to benefit laborers in certain situations and both exclude agricultural employees.

In the Irvine case it was argued that due to the size of the ranch involved and the great deal of specialization among the workers, many of the employees were not engaged in agricultural labor. This court rejected the argument, saying, at page 576: " 'An examination of the cases cited in Words and Phrases, Fifth Series, Vol. 1, p. 339 et seq., under "agriculture" and in 3 C.J.S., Agriculture, pages 361, 365 and 366, sec. 1, under "agricultural" and "agriculture," convinces that in modern usage this is a wide and comprehensive term and that statutes using it without qualification, must be given an equally comprehensive meaning.' (Citation.)" After quoting with approval from *Miller & Lux, Inc.* v. *Industrial Acc. Com.*, *supra*, 179 Cal. 764, to the effect that the term "agricultural" was used by the Legislature to embrace everything reasonably connected with farming operations, this court again said, at pages 581-582: ". . . it is reasonable to assume that the Legislature, in using the broad term 'agricultural labor' as a base exemption under our Unemployment Insurance Act, was cognizant and took account of the meaning ascribed to that term under our Workmen's Compensation Act as discussed some sixteen years earlier in the Miller & Lux case, *supra*.

". . . The act does not include or exclude a carpenter be-

cause he is a carpenter or an unskilled laborer because he is such. Irrespective of his particular trade or skill, it is the work that he is doing and the circumstances under which he does it that brings him within or without the provisions of the act. If his services are performed on a farm while a regular employee of the owner or tenant of the farm, and if such services are essential for the purpose of producing agricultural crops under the system of work established in furtherance of that purpose, such services must be classed as 'agricultural labor' regardless of the fact that the particular services of such employee might ordinarily be classed otherwise if performed under different circumstances.''

In addition to the foregoing authorities, we have the following rule: The contemporaneous administrative construction of a statute by those charged with its enforcement and interpretation, while not necessarily controlling, is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. (*City of Los Angeles* v. *Rancho Homes, Inc.*, 40 Cal.2d 764, 770 [8] [256 P.2d 305]; *Holloway* v. *Purcell*, 35 Cal.2d 220, 226 [6] [217 P.2d 665]; *Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [1] [156 P.2d 1].)

Applying the foregoing rule to the present case, we find a long line of decisions of the Industrial Accident Commission holding that one engaged in clearing stumps and trees from farm land is engaged in ''agricultural'' or ''horticultural'' labor and thus not covered by the Workmen's Compensation Act. (See *Mastagni* v. *Nerelli*, 7 I.A.C. 102; *Miller* v. *Algar*, 2 I.A.C. 558; *Whitney* v. *Peterson*, 1 I.A.C. Pt. II 306; *Martin* v. *Russian River Fruit & Land Co.*, 1 I.A.C. Pt. II 18; *cf. Kincannon* v. *Rudd*, 12 I.A.C. 268; *Muzquiz* v. *Marchetti*, 10 I.A.C. 196; *Hanson* v. *Scott*, 2 I.A.C. 721.)

Finally, in deciding whether Mr. Andersen was engaged in horticultural labor at the time of his injury, it is immaterial that the farm did not constitute the chief source of petitioners' income.

The Industrial Accident Commission has well stated the rule in *Panama-Pacific International Exposition Co.* v. *Hooper*, 1 I.A.C. Pt. II 430. In this case the employee had his eye scratched by a limb of a tree which he was watering. After considering the statutory and dictionary definitions of ''agriculture,'' the commission said, at page 431: ''From this it appears that horticultural labor includes all persons engaged in gardening or in caring for trees or shrubs. *It is*

*immaterial whether the employer is raising such trees or shrubs for profit, as a fruit grower, or is doing so for his own pleasure.''* (Emphasis added.)

It thus appears that since Mr. Andersen was a regular employee of the farm and his services were essential for the purpose of producing agricultural products under the system of work established by petitioners in furtherance of that purpose, such services must be classified as agricultural labor.

The award is annulled.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., Peters, J., and White, J., concurred.